**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSHUA HORTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | |
| | ) | **Case No 1:23-cv-1239-STA-jay** |
| **CENTURION OF TENNESSEE, LLC;** | ) | |
| **TENNESSEE DEPARTMENT OF** | ) | |
| **CORRECTION; NORTHWEST** | ) | **JURY DEMANDED** |
| **CORRECTIONAL COMPLEX; RICHARD** | ) | |
| **P. GUERRANT, III, M.D., Individually and** | ) | |
| **in His Official Capacity, as a Medical Services** | ) | |
| **Provider at Northwest Correctional Complex,** | ) | |
| **TOMMIE JUNE HENDRIX LABONTE,** | ) | |
| **APRN, Individually and in Her Official** | ) | |
| **Capacity as a Medical Services Provider at** | ) | |
| **Northwest Correctional Complex; and** | ) | |
| **DOES 1-15,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**ORDER GRANTING IN PART INDIVIDUAL DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (ECF NO. 90)**

**ORDER GRANTING IN PART DEFENDANT CENTURION OF TENNESSEE, LLC'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 91)**

**ORDER DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(ECF NO. 94)**

**ORDER DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER
PLAINTIFF'S REMAINING CLAIMS**

**ORDER OF DISMISSAL**

---

Before the Court is Defendants Richard P. Guerrant, III, M.D. and Tommie June Hendrix

Labonte, APRN's Motion for Summary Judgment (ECF No. 90), Defendant Centurion of

Tennessee, LLC's Motion for Summary Judgment (ECF No. 91), and Plaintiff Joshua Horton's

Motion for Summary Judgment (ECF No. 94). The non-moving parties have responded to each

Motion, and the moving parties have filed reply briefs. The issues presented in the Rule 56 Motion

are now ripe for disposition. For the reasons set forth below, Defendants' Motions for Summary Judgment are **GRANTED** as to Plaintiff's § 1983 claims, and Plaintiff's Motion for Summary Judgment is **DENIED** as to his § 1983 claims. Pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims and hereby **DISMISSES** those without prejudice.

## BACKGROUND

Plaintiff is an inmate in the custody of the Tennessee Department of Correction who alleges that private contractors who are medical staff at his former facility provided inadequate medical care. More specifically, Plaintiff would hold Richard P. Guerrant, III, M.D. ("Dr. Guerrant") and Nurse Practitioner Tommie June Hendrix-Labonte ("NP Hendrix-Labonte") liable under 42 U.S.C. § 1983 for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. Plaintiff further alleges that Defendant Centurion of Tennessee, LLC ("Centurion")'s policy or custom was the moving force behind his constitutional injury. Plaintiff would also hold all Defendants liable for medical negligence under the Tennessee Health Care Liability Act.

### I. Parties' Briefing of the Undisputed Facts for Purposes of Summary Judgment

The parties now seek judgment as a matter of law on Plaintiff's constitutional and state law claims. To decide the parties' Motions for Summary Judgment, the Court must first consider whether any genuine issue of material fact exists that might preclude judgment as a matter of law. A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A dispute about a material fact is genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the record and show that the evidence fails to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1). Local Rule 56.1(a) requires a party seeking summary judgment to prepare a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local R. 56.1(a). In support of their Motions, each moving party filed a statement of undisputed facts to which the non-moving parties have responded. Based on the parties' submissions, the Court finds that the following facts are undisputed for purposes of summary judgment, unless otherwise noted.

Centurion contracted with the State of Tennessee Department of Correction to provide healthcare services for incarcerated individuals at TDOC facilities, including Northwest Correctional Complex ("NWCX"). Centurion's Statement of Undisputed Fact ¶ 1 (ECF No. 91-12). At all times during Horton's incarceration at NWCX, Centurion and its licensed healthcare professionals provided healthcare services to Horton and other inmates. *Id*. ¶ 3. As part of the medical care provided at TDOC facilities like NWCX, inmates could request to be seen by a medical professional by submitting a sick call request ("SCR") with a description of the medical issue they were experiencing or stating their reasons for seeking treatment. *Id*. ¶ 4. A sick call nurse would collect the SCRs, log them, and see inmates for evaluation, usually the next day. *Id*. ¶ 5. Nursing staff would screen the complaints and could refer inmates to providers for additional care when necessary. *Id*. ¶ 6.

Plaintiff Joshua Horton entered TDOC custody on November 4, 2019, and was transferred to NWCX on January 5, 2020. Indiv. Defs.' Statement of Undisputed Fact ¶ 1. On November 29, 2020, Horton submitted an SCR in which he stated his "arms and legs have been going numb

randomly." *Id.* ¶ 2. In response to the SCR, Physician's Assistant Amanda Collins ("P.A. Collins") conducted a neurologic assessment, ordered a laboratory work-up, and referred Horton to a physician. *Id.* ¶ 3. Horton then saw Dr. Fowler who conducted a medical history and physical examination of Horton and ordered cervical and lumbar spine x-rays. *Id.* ¶ 4. The x-rays showed "modest and moderate degenerative changes of the lumbar and cervical spine respectively." *Id.* Plaintiff has not named P.A. Collins or Dr. Fowler as parties to this suit. Dr. Guerrant saw Horton on February 10, 2021. *Id.* ¶ 5. At that visit Dr. Guerrant reviewed Horton's x-ray results with him, diagnosed him with degenerative disease of the cervical and lumbar spine, and prescribed a non-steroidal anti-inflammatory drug ("NSAID").

Horton next submitted an SCR on February 23, 2021, noting he "[f]ell because his leg was numb." *Id.* ¶ 6. Following evaluation by nursing sick call staff, Horton was seen by NP Hendrix-Labonte on March 2, 2021. *Id.* ¶ 7. NP Henxdrix-Labonte documented Horton's complaints of numbness in his right leg and right arm, which had been ongoing since December 2021. *Id.* NP Hendrix-Labonte prescribed a steroid taper, ordered an electrocardiogram (EKG) and lab tests, and referred Horton to a physician. *Id.* ¶ 8. Dr. Fowler saw Horton on March 4, 2021. *Id.* ¶ 9. Dr. Fowler noted that his physical exam was unremarkable, prescribed NSAIDs, and ordered a cervical x-ray. *Id.* The x-ray, which was completed the same day, showed a prior cervical fusion at the C5-C6 vertebrae and degenerative osteoarthritis. *Id.*

Horton was seen by Dr. Fowler for a follow-up on May 4, 2021. *Id.* ¶ 10. Dr. Fowler noted Horton's "relapsing, remitting variable course of weakness and paresthesia." *Id.* Dr. Fowler ordered a comprehensive laboratory work-up, the results of which were normal. *Id.* Horton was next seen by Dr. Fowler on June 8, 2021. *Id.* ¶ 11. At that time Dr. Fowler requested an MRI. *Id.* The MRI, completed at Nashville General Hospital on June 7, 2021, showed "multilevel

degenerative disc disease with loss of disc height and disc desiccation" in the cervical section of Horton's spine and otherwise noted "[n]o significant disc herniation central canal or foraminal stenosis" at his thoracic spine. *Id.*[1]

After receiving the results of the MRI, Dr. Fowler requested a neurosurgical evaluation. *Id.* ¶ 12. Horton was seen by the neurosurgeon on August 25, 2021. *Id.* ¶ 13. Horton told the neurosurgeon that his symptoms included weakness in his extremities, increased pain when lying down, and difficulty with balance. *Id.* ¶ 14. The parties interpret the neurosurgeon's evaluation in slightly different ways. According to the Individual Defendants, the neurosurgeon noted Horton's chronic neck pain with "some intermittent right upper extremity numbness." *Id.* Plaintiff responds that the neurosurgeon's diagnosis was limited only to cervical disc degeneration and cervical region radiculopathy and did not implicate other regions of Plaintiff's spine. Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 13. The neurosurgeon recommended physical therapy, anti-inflammatory medications, and referral to a pain management specialist for cervical facet injections if the symptoms progressed. Defs.' Statement of Undisputed Fact ¶ 15. Horton testified he was later told on September 21, 2021, he was not a candidate for surgery. *Id.*

On August 27, 2021, Horton was provided a mobility device called a "rollator." *Id.* ¶ 16. Plaintiff adds that there was no medical reason documented to show why he was provided with the device at that time. Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 16.[2]

---

[1] Plaintiff's response to Defendants' statement here adds more detail about the actual findings from the MRI. Because the additional information is well supported in the record, the Court has incorporated it here.

[2] Plaintiff also asserts that providing the rollator "could be construed as 'treatment' for the thoracic condition that would ultimately paralyze Plaintiff." Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 16. But Plaintiff's point is actually an argument about the permissible inferences to be drawn about the rollator, not evidence to somehow dispute Defendants' assertion that Plaintiff received a rollator in August 2021.

Horton submitted an SCR on September 7, 2021, and was seen the same day by NP Hendrix-Labonte. Defs.' Statement of Undisputed Fact ¶ 17. NP Hendrix-Labonte reviewed the neurosurgeon's report and recommendations and requested a physical therapy consultation. *Id.* Horton was seen by Dr. Fowler on September 16, 2021. *Id.* ¶ 18. Dr. Fowler noted the neurosurgeon's evaluation and requested a lumbar MRI for lumbar radiculopathy with cervical and lumbar osteoarthritis. *Id.* On September 29, 2021, Horton was transferred to another TDOC facility where he received a physical therapy evaluation and was provided a home exercise program. *Id.* ¶ 19. Horton received the lumbar MRI in October 2021 and was seen by Dr. Guerrant on October 15, 2021, as a follow-up to the MRI. *Id.* ¶ 20.

Dr. Fowler next saw Horton on December 9, 2021, in response to an SCR on December 2, 2021, requesting an appointment. *Id.* ¶ 21. Dr. Fowler noted at that time Horton's condition was not worse, provided him with ibuprofen, and continued the current treatment plan. *Id.* On December 17, 2021, Horton was seen by P.A. Collins for follow-up. *Id.* ¶ 22. Horton reported "no improvement" and was walking with a cane. *Id.* P.A. Collins prescribed a muscle relaxant and an antidepressant that is often used for neuropathic pain since Horton had not experienced relief with other treatment options. *Id.* ¶ 23. Horton was issued a low bunk pass on January 27, 2022, which was continuously renewed thereafter. *Id.* ¶ 24.

On March 1, 2022, NP Hendrix-Labonte requested a referral for Horton to a pain management specialist for cervical facet injections. *Id.* ¶ 25. After the referral was approved, Horton was taken to Nashville General Hospital on April 5, 2022, and received a transforaminal epidural steroid injection ("ESI") in the cervical spine at the C6-C7 level. *Id.* ¶ 26.[3] Horton was

---

[3] Once more, Plaintiff disputes the fact by arguing that Defendants' "fact could be construed as 'treatment' for the thoracic spinal condition that would ultimately paralyze Plaintiff and Defendants' recitation of this fact changes the character of what actually transpired." *Id.* ¶ 26. The

seen by P.A. Collins for a follow-up on April 11, 2022. *Id.* ¶ 27. Horton continued to use the rollator, and another follow-up was scheduled to assess the effectiveness of the ESI in reducing hi pain. *Id.*

Horton requested a change in health classification and was seen by Dr. Guerrant on June 13, 2022. *Id.* ¶ 28. Dr. Guerrant documented Horton's medical history including physical therapy and the ESIs and noted inconsistencies between the MRI findings and Horton's symptoms, the sporadic nature of his symptoms, and his normal functioning between episodes. *Id.* Dr. Guerrant continued Horton's special accommodations. *Id.* ¶ 29.

On July 6, 2022, Horton was involved in a motor vehicle accident in a TDOC transport van. *Id.* ¶ 30; Pl.'s Statement of Undisputed Fact ¶ 1 (ECF No. 94-13). Horton initially denied injuries after the accident but upon transfer back to his home facility, reported chest discomfort with breathing. Defs.' Statement of Undisputed Fact ¶ 31. Horton was seen by P.A. Collins on July 11, 2022. *Id.* P.A. Collins documented old bruises on Horton's chest and lower back. *Id.* P.A. Collins ordered chest and rib x-rays and prescribed pain medication. *Id.* ¶ 32; Pl.'s Statement of Undisputed Fact ¶ 2.

P.A. Collins assessed Horton again on July 21, 2022, following an SCR for continued reports of pain from the accident. Defs.' Statement of Undisputed Fact ¶ 33. Horton stated in the SCR: "My neck is getting cramps and my back is not getting better from car wreck." *Id.*[4] Horton

---

Court notes Plaintiff's argument but continues to find that his point concerns the inference to be drawn from the fact, and not the fact of the treatment itself or any of the circumstances surrounding it.

[4] Just as with other parts of his briefing on the undisputed facts, Plaintiff argues that the "fact could be construed as 'treatment' for the thoracic spinal condition that would ultimately paralyze Plaintiff . . . ." *Id.* ¶ 32. The Court notes Plaintiff's argument but continues to find that his point concerns the inference to be drawn from the fact, and not the fact of the treatment itself or any of the circumstances surrounding it.

received a second ESI in the cervical spine at C6-C7, on July 26, 2022. *Id.* ¶ 34; Pl.'s Statement of Undisputed Fact ¶ 2. P.A. Collins saw Horton on July 28, 2022, and documented that Horton said it was "too soon" to see any difference after the ESI. Defs.' Statement of Undisputed Fact ¶ 35. P.A. Collins continued the same course of treatment and noted a plan to reassess Horton in one to three months to assess the efficacy of the ESIs. *Id.* ¶ 36.

Horton submitted an SCR on August 1, 2022, complaining that he was still experiencing pain in his ribs following the accident. *Id.* ¶ 37. Horton stated in the SCR: "My ribs are still hurting from [sic] wreck weeks ago." *Id*. P.A. Collins saw Horton on August 5, 2022, and renewed his NSAID and special accommodations passes. *Id.* ¶ 38. P.A. Collins had a follow-up visit with Horton on September 23, 2022, to assess the effectiveness of the ESI. *Id.* ¶ 39. Horton reported he could not tell a difference, and his exam was unchanged. *Id*. Plaintiff adds that P.A. Collins' noted at the time Horton's prior diagnosis of "cervical disc degeneration." Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 39. P.A. Collins's request for another ESI referral was rejected by TDOC Utilization Management on September 23, 2022. Defs.' Statement of Undisputed Fact ¶ 40; Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 40. P.A. Collins included in the notes supporting the request a diagnosis of "cervical spine degeneration." *Id*. Dr. Rich who is not otherwise identified in the discovery materials responded as follows to the request: "Given documentation of no benefit in pain reduction to patient in 3 months of the first ESI patient unlikely to benefit from continued injections. Please consider alternate modes of pain management." *Id*.

Horton submitted another SCR on October 3, 2022, complaining his back gave out and that pain medication and Icy Hot were not reducing the pain. Defs.' Statement of Undisputed Fact ¶ 41. Horton's SCR stated: "My back gave out last week[.] I was thinking it would pass but it has not. I have tried Tylenol, [illegible], naproxen, and icy hot. Nothing has helped the pain. I can't move

without spasms." Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 41.[5]  Sick call nursing staff referred Horton to Dr. Guerrant, who saw him on October 10, 2022.  Defs.' Statement of Undisputed Fact ¶ 42.  Dr. Guerrant tested Horton's ability to walk, to stand from a seated position, and to move his upper extremities.  *Id*. ¶ 43.  Plaintiff adds that in his notes Dr. Guerrant observed that Horton's midback pain appeared to be unrelated to his prior condition, that Horton underwent an unsuccessful ESI of his cervical spine, that Horton was reporting both pain and numbness with no new injury, that Horton had a history of an unsuccessful ESI of his cervical spine, and that Horton presented on October 10, 2022 "with complaints of symptoms involving his midback [in] mid thoracic to mid lumbar area."  Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 43.

Dr. Guerrant told Horton he would request an MRI and that he was concerned about Horton's symptoms and needed more information.  Defs.' Statement of Undisputed Fact ¶ 44. Plaintiff adds here that Dr. Guerrant's notes indicate the request for a thoracic MRI was to "[rule out] more cephalad injury."  Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 44.  Based on Horton's "history of degenerative disease of the cervical spine," Dr. Guerrant requested a thoracic spine MRI. Defs.' Statement of Undisputed Fact ¶ 43; Pl.'s Statement of Undisputed Fact ¶ 6.

Dr. Guerrant's MRI request was denied on October 18, 2022. Defs.' Statement of Undisputed Fact ¶ 45.  The written explanation from TDOC accompanying the denial read as follows:

> ATP-please clarify rationale for thoracic spine MRI in patient with known cervical disc disease without new deficits (pain and numbness noted in consult but not demonstrated in progress note).  Please also provide documentation of contraindication to or failure of a trial of NSAIDS or acetaminophen for at least 5 weeks, failure of home exercises for at least 6 weeks, and failure of activity

---

[5] Plaintiff asserts in his own statement of facts that the pain was "not associated with the July motor vehicle accident."  Pl.'s Statement of Undisputed Fact ¶ 5.  However, Plaintiff has cited only the written SCR itself.  The Court finds that the written exhibit speaks for itself and says nothing in reference to the July 2022 accident.

modification for at least 6 weeks.

Centurion Outpatient Prior Authorization Consult Form, ex. 2 to Guerrant Dep. PageID 1967 (ECF No. 94-2). Dr. Guerrant testified that he interpreted the denial as Utilization Management recommending as an alternative a trial of pain medication, home exercise programs, and activity modification. Defs.' Resp. to Pl.'s Statement of Undisputed Fact ¶ 7. Dr. Guerrant believed the recommended alternative treatments identified in the denial were "reasonable." *Id*. So Dr. Guerrant implemented the recommendations as to the alternative treatment. *Id.*

According to Horton, medical staff had already tried the Utilization Management's alternative treatment plan. Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 45. Furthermore, Horton argues that the rationale given for the denial of the request suggests that Dr. Guerrant's request for the MRI was denied because Dr. Guerrant did not provide the additional information requested by Utilization Management. *Id*.; Pl.'s Statement of Undisputed Fact ¶ 7. Defendants dispute that the MRI request was denied due to some omission by Dr. Guerrant.

On October 19, 2022, Horton submitted an SCR stating, "Need something for back pain that I was seen for around the 10th it is starting to hurt when I breath[e]." Pl.'s Statement of Undisputed Fact ¶ 8. On October 24, 2022, Horton stated in another SCR: "I have put in sick calls on 19 Oct 22 and 23 Oct 22 and was not called for either! I am experiencing severe back pain and was seen the 10th. It is worse and causing more issues. I can [sic] not take a full breath now without intense pain." *Id*. ¶ 9.

Horton was seen by P.A. Collins on October 28, 2022. Defs.' Statement of Undisputed Fact ¶ 46. According to P.A. Collins's notes, Horton was complaining about pain in his ribs and sides. Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 46. P.A. Collins noted Horton's history of degenerative joint disease in his cervical spine and that Horton reported 4/10 pain that was more

pronounced when breathing deeply or stretching. *Id.* P.A. Collins prescribed the pain medication Mobic and consulted with a physician. *Id.* On October 31, 2022, Horton submitted an SCR stating, "Follow up on back. Pain is still bad. Was seen around the 10th." Pl.'s Statement of Undisputed Fact ¶ 10.

On November 8, 2022, Horton submitted an SCR. Defs.' Statement of Undisputed Fact ¶ 47. Horton stated in his SCR: "Back pain is escalating badly. Can barely move now. This has been going on for over a month. I need to see a provider today please." Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 47; Pl.'s Statement of Undisputed Fact ¶ 11. NP Hendrix-Labonte saw Horton on November 9, 2022, conducted an evaluation, ordered a steroid taper for 12 days, and requested a follow-up appointment in two weeks to evaluate the effectiveness of the treatment. *Id.* ¶ 48. According to Individual Defendants, Horton was not experiencing any symptoms of incontinence or paralysis as of November 8, 2022. *Id.* ¶ 49. Plaintiff disputes the assertion based on the statement in the SCR "Can barely move now." Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 49.

Horton was seen by sick call nursing staff on November 11, 2022, where an assessment revealed decreased range of motion and weakness. Defs.' Statement of Undisputed Fact ¶ 50. Plaintiff adds that he also complained of "6/10" sharp and constant pain and difficulty in activities of daily living. Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 50. NP Hendrix-Labonte assessed Horton's condition on November 15, 2022, at which time she renewed his bottom bunk pass and refilled his Icy Hot prescription. Defs.' Statement of Undisputed Fact ¶ 51. NP Hendrix-Labonte advised Horton the cervical steroid injection request had been denied and that Dr. Guerrant ordered a thoracic x-ray and requested an MRI, presumably a reference to the MRI request submitted by Dr. Guerrant in October 2022. *Id.* ¶ 52.

Horton submitted an SCR on November 20, 2022, and again on November 25, 2022. *Id.* ¶

53. Horton requested an appointment with Dr. Guerrant. *Id.* Horton stated in the SCRs: "Follow up with Dr. Guerrant on my back. Still in extreme pain can barely walk or stand." Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 53; Pl.'s Statement of Undisputed Fact ¶ 12. In response to those SCRs, Horton refused to be seen by sick call nursing staff because he was told he had an upcoming appointment with a provider. Defs.' Statement of Undisputed Fact ¶¶ 54, 55. On November 28, 2022, Plaintiff submitted an SCR stating, "Need something to ease back pain. Can't walk due to it in the mornings at all. It is very severe." Pl.'s Statement of Undisputed Fact ¶ 13.

Horton was seen by N.P. Hendrix-Labonte on November 30, 2022. Defs.' Statement of Undisputed Fact ¶ 56; Pl.'s Statement of Undisputed Fact ¶ 14. N.P. Hendrix-Labonte documented an extensive assessment that included, among other things, denial of difficulty controlling bladder or bowels and 10/10 pain. Defs.' Statement of Undisputed Fact ¶ 56. According to her notes, Horton reported that his back pain began after the van accident and that his loss of stability and loss of sensation started two years ago. *Id.* A neurologist who had evaluated Horton recommended physical therapy and injections. *Id.* The physical assessment conducted by NP Hendrix-Labonte revealed tenderness in Horton's back and abdomen, that his sensation was intact, that he was able to flex forward with severe pain, weakness in his upper and lower extremities, and that his gait was stable with the rollator. *Id.* Plaintiff adds that NP Labonte made her notes about Horton's history after reviewing Horton's medical records. Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 56. Her notes also stated "Severe midback pain," "unstable gait," diminished ability to hold arms in front of body, and muscle weakness in upper and lower extremities and pain that interferes. *Id.*

Following her examination on November 30, 2022, NP Hendrix-Labonte discussed Horton's case with Dr. Guerrant the same day. Defs.' Statement of Undisputed Fact ¶ 57. Dr. Guerrant and NP Hendrix-Labonte developed a plan to submit a new request for an MRI. *Id.*

Consistent with the plan, on November 30, 2022, NP Hendrix-Labonte requested a thoracic spine MRI for "mid-back pain, status-post involved in MVA" and requested it be done at a local hospital. *Id*. ¶ 58. The request for the MRI was approved on December 8, 2022, and scheduled for December 21, 2022. *Id*. ¶ 59.

Also, on November 30, 2022, Dr. Guerrant ordered a kidney-ureters-bladder x-ray for Horton's abdominal pain and a thoracic x-ray for "severe back pain." *Id*. ¶¶ 59, 60. The written X-Ray Request/Report dated November 30, 2022, and signed by both Dr. Guerrant and NP Hendrix-Labonte stated: "Thoracic X-ray/severe back pain." Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 58. The x-rays were performed on December 2, 2022. Pl.'s Statement of Undisputed Fact ¶ 15. The radiologist's report read as follows: "Results: T8 and T9 vertebral body height loss . . . Complete disc height loss at T8-T9," and "Conclusion: Complete loss of disc height at T8-T9 concerning for compression fractures, discitis/osteomyelitis, and/or malignancy, new since prior." Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 61; Pl.'s Statement of Undisputed Fact ¶ 16. Osteomyelitis is a vertebral infection that can cause death, infection, paralysis, and malignancy. *Id.* ¶ 3. The radiologist who interpreted the results of the x-ray did not note the results were emergent or urgent. Defs.' Statement of Undisputed Fact ¶ 61.

Horton submitted an SCR on December 5, 2022. Defs.' Statement of Undisputed Fact ¶ 63. Horton stated in the SCR: "I need to go to ER immediately because I can't sit up or stand up. My back is getting worse every day. I need a wheelchair to take me where I need to go." Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 63; Pl.'s Statement of Undisputed Fact ¶ 17. Horton was seen by sick call nursing staff on December 6, 2022. Defs.' Statement of Undisputed Fact ¶ 64. NP Hendrix-Labonte was notified. *Id.* NP Hendrix-Labonte wrote an order for an appointment to be scheduled so she could discuss Horton's x-ray results with him. *Id.* ¶ 65.

Horton submitted another SCR on December 7, 2022. *Id*. ¶ 66. Horton stated in the SCR: "Follow up with back pain. I need something to stop my weight from dropping further. I can't walk or eat the pain is so bad." Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 66; Pl.'s Statement of Undisputed Fact ¶ 18. Nursing staff performed an evaluation on December 8, 2022. Defs.' Statement of Undisputed Fact ¶ 67. Horton's vital signs were normal, and he did not have a fever. *Id.* Plaintiff adds that the progress notes also showed as follows: 10/10 pain, no relieving factors, numbness, tingling, all in the thoracic area, that Horton "couldn't stand on his own," and that he was "carried to [the] clinic in [a] wheelchair." Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 67. The December 8, 2022 Nursing Protocol Progress Note – Musculoskeletal was marked "Urgent" and indicated that the provider should be contacted immediately when pain is 7/10+. *Id.* Sick call nursing staff called Dr. Guerrant on December 8, 2022, and read him Horton's x-ray results. Defs.' Statement of Undisputed Fact ¶ 68. Dr. Guerrant ordered naproxen 500 mg twice a day for seven days. *Id.* ¶ 69.

The next day, December 9, 2022, Dr. Guerrant saw Horton and prescribed Flexeril, a muscle relaxer, and Ultram, a pain killer, three times a day for five days. *Id*. ¶ 70. Plaintiff adds that Dr. Guerrant did not recall the details of his examination of Horton on December 9, 2022, or the fact that Horton was brought to the appointment in a wheelchair. Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 70.

Horton submitted an SCR on December 11, 2022. Defs.' Statement of Undisputed Fact ¶ 71. Horton stated in the SCR: "Need to see Dr. Guerrant or ER, today. Over the weekend loss use of right leg and left leg is doing the same. Can't walk and things are worsening." Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 71. Dr. Guerrant and NP Hendrix-Labonte testified that they did not see the December 11, 2022, SCR when it was submitted. Defs.' Statement of Undisputed

Fact ¶ 72.[6] Horton was brought to the clinic on December 19, 2022. *Id.* ¶ 73. By that time, Horton was unable to move his legs and incontinent of urine. *Id.* Dr. Guerrant was notified, and Horton was taken to a hospital emergency room on December 19, 2022. *Id.* ¶ 74; Pl.'s Statement of Undisputed Fact ¶ 20.

At the hospital, Horton was diagnosed with vertebral osteomyelitis, the subsequent surrounding inflammation and adjacent epidural abscess causing a spinal cord injury at the T8-T9 level. Defs.' Statement of Undisputed Fact ¶ 75, 77. The predominant feature of a spinal epidural abscess is pain that radiates to different parts of the body depending on the location of the abscess. Pl.'s Statement of Undisputed Fact ¶ 4. As the abscess progresses, neurologic deficits develop, including extremity weakness, bowel and bladder incontinence, and paralysis. *Id.* Defendants cite opinion testimony that the "main things" that would lead a physician to consider the existence of a spinal epidural abscess would be the presence of a fever or complaints of bowel or bladder incontinence. Defs.' Resp. to Pl.'s Statement of Undisputed Fact ¶ 4. Defendants' opinion witness testified: "by far and away the most common way that epidural abscess would present . . . would be [in] an IV drug user." *Id.*

Plaintiff adds that the full diagnosis included (a) severe T8-T9 level discitis osteomyelitis with destruction of these bodies; (b) thoracic epidural phlegmon most prominent at the T8-T9 level with secondary severe never canal narrowing and severe flattening compression of the thoracic spinal cord; (c) large thoracic anterior paraspinal soft tissue phlegmon centered at T8-T9 level; (d) mild mid to inferior thoracic spinal posterior paraspinal myositis; (e) T8-T9 severe bilateral

---

[6] Plaintiff argues that this testimony is "unreliable" because both Individual Defendants did not recall much detail about their treatment of Horton in early December 2022. Plaintiff's characterization of the testimony does not alter the fact that this statement accurately reflects their testimony about the SCR Plaintiff submitted on December 11, 2022.

foraminal narrowing and T9-T10 moderate bilateral foraminal narrowing secondary to the epidural phlegmon; and (f) additional degenerative changes. Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 75, 77. Blood cultures taken at the hospital revealed staphylococcus and antibiotics were administered. Defs.' Statement of Undisputed Fact ¶ 76. Horton was given IV antibiotics for the infection, physical therapy, and pain management, and discharged to TDOC custody on January 5, 2023. *Id.* ¶ 79.

Defendants cite evidence that Horton's diagnosis of vertebral osteomyelitis is a "relatively rare condition." *Id.* ¶ 78. Plaintiff does not specifically dispute the evidence but cites evidence of his own that his symptoms were all hallmarks of spinal epidural abscess/osteomyelitis, which Dr. Guerrant and NP Hendrix-Labonte should have explored as part of their differential diagnosis in Horton's case. Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 78.

## II. Individual Defendants' Motion for Summary Judgment (ECF No. 90)

The parties have filed Rule 56 cross-motions, seeking judgment as a matter of law Plaintiff's claims for relief. In their Motion for Summary Judgment, Dr. Guerrant and NP Hendrix-Labonte argue that no dispute of material fact exists over Plaintiff's constitutional claim under § 1983 or his medical negligence claim under Tennessee law. First, the Individual Defendants argue that Plaintiff cannot prove either provider was deliberately indifferent to Plaintiff's medical needs. In the parlance of the Eighth Amendment case law on deliberate indifference, Plaintiff cannot show that Dr. Guerrant or NP Hendrix-Labonte actually drew an inference that Plaintiff faced a substantial risk of harm to his health and then ignored the risk. Plaintiff's theory of the case is that the Individual Defendants should have conducted more testing or sent Plaintiff to an outside hospital sooner. However, Plaintiff cannot show that the Individual Defendants provided no care at all. Plaintiff just disputes the adequacy and reasonableness of the care he actually received. Plaintiff's

own opinion witness testified he found no evidence that Dr. Guerrant knew Plaintiff had a spinal epidural abscess or suspected a spinal epidural abscess before Horton was hospitalized on December 19, 2022. The same reasoning applies to preclude Plaintiff's § 1983 claim against NP Hendrix-Labonte.

Next, the Individual Defendants argue they are entitled to summary judgment on Plaintiff's medical negligence claims. Plaintiff has disclosed the following opinion witnesses to support his medical negligence claims: Dr. Ronald Flenner, Dr. Johnny Bates, Dr. Tobis Mattei, D.N.P. Michael McMunn, and ARNP Andrew Matey. The Individual Defendants contend that Plaintiff's opinion witness cannot satisfy Tennessee's locality rule. None of the experts are familiar with the standard of medical care in Tiptonville, Tennessee, or a similar community. Without expert opinion evidence to prove how Dr. Guerrant or NP Hendrix-Labonte violated the applicable standard of care, Plaintiff cannot carry his burden of proof on his medical negligence claims.[7] Therefore, the Individual Defendants seek summary judgment on all of Plaintiff's claims against them.

### III.   Centurion's Motion for Summary Judgment (ECF No. 91)

In a separate Motion for Summary Judgment, Centurion seeks judgment as a matter of law on Plaintiff's claims against it. Centurion argues that if the Court grants the Individual Defendant summary judgment on the § 1983 claims against them, there can be no basis of liability against Centurion. Even if Plaintiff could prove a § 1983 claim against one or both of the Individual Defendants, he has not identified any Centurion custom or policy that was the moving force behind

---

[7] All Defendants have filed a separate Motion to Exclude Testimony of Plaintiff's Liability Experts (ECF No. 60) as well as a Motion to Strike (ECF No. 105). In their Motion to Exclude, Defendants make a substantially similar argument based on the locality rule. In their Motion to Strike, Defendants argue that as part of his response to Defendants' Motions for Summary Judgment, Plaintiff attached supplemental declarations from two of his opinion witnesses, Dr. McMunn and Dr. Bates, addressing the locality rule. Defendants contend that the supplemental declarations constitute improper late disclosures of new opinion evidence.

the alleged violation of his rights. And Plaintiff has not adduced any evidence to support his claim that Centurion is liable for a failure to train its medical personnel. As for Plaintiff's medical negligence claim, Plaintiff cannot hold Centurion vicariously liable for the supposed medical negligence of Dr. Guerrant or NP Hendrix-Labonte because Plaintiff's opinion witnesses cannot satisfy Tennessee's locality rule. For each of these reasons, Centurion argues it is entitled to judgment as a matter of law.

## IV. Plaintiff's Motion for Summary Judgment (ECF No. 94)

For his part, Plaintiff also seeks judgment as a matter of law on his § 1983 claims and his medical negligence claims under Tennessee law. Plaintiff frames the inquiry by focusing on the period following the July 2022 motor vehicle accident and even more specifically, Defendants' "failure to appropriately diagnose, treat or, direct his treatment . . . during the critical period from December 5, 2022 through December 8, 2022." Pl.'s Mot. for Summ. J. 2. Plaintiff cites the testimony of his opinion witnesses concerning the origin of the spinal abscess and the urgent need for medical care. According to Plaintiff, Dr. Guerrant and NP Hendrix-Labonte "were aware of Plaintiff's condition by at latest, December 8, 2022, yet chose to do nothing aside from prescribe naproxen and schedule a nonemergent MRI." *Id.* at 13. Plaintiff also emphasizes the little detail the Individual Defendants recalled about their treatment of Plaintiff's condition in early December 2022. Plaintiff argues that the record supports the conclusion as a matter of law that the Individual Defendants were deliberately indifferent to his serious medical needs in violation of 42 U.S.C. § 1983. Concerning his medical negligence claim, Plaintiff simply states, "Plaintiff respectfully requests that this Court also enter judgment in his favor, for if this case is not a study in the harmful consequences of substandard medical care, one does not exist." *Id.* at 19.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court does not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna*, 934 F.3d at 515 (citing *Anderson*, 477 U.S. at 255). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**ANALYSIS**

I. **Eight Amendment Violations Under 42 U.S.C. § 1983**

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. "Section 1983

is not the source of any substantive right," *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001), but creates a "species of tort liability" for the violation of rights guaranteed in the Constitution itself. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). In order to make out a § 1983 claim, a plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

The constitutional right implicated here is Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment. The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. am. VIII. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103, 105 (1976). The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Id.* at 103. Even so, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105; *see Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) ("Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'"). The mere failure to provide adequate medical care to a prisoner will not violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* at 105; *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).

There is a constitutional violation only when the provider exhibits "*deliberate indifference to a prisoner's serious illness or injury.*" *Estelle*, 429 U.S. at 107. An Eighth Amendment claim based on deliberate indifference to a serious illness or injury has both objective and subjective

components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component of a deprivation of medical care claim requires that a prisoner have a serious medical need. *Farmer*, 511 U.S. at 834; *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Id.* at 897; *see Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017) (describing the "two theories under which a plaintiff can demonstrate the objective component of an Eighth Amendment deliberate indifference claim").

When an inmate has a medical need "diagnosed by a physician as mandating treatment," the plaintiff can establish the objective component by showing that the prison failed to provide treatment or provided treatment "so cursory as to amount to no treatment at all." *Rhinehart*, 894 F.3d at 737; *see Whyde v. Sigsworth*, No. 22-3581, 2024 WL 4719649, at *5 (6th Cir. Nov. 8, 2024) ("a medical professional is deliberately indifferent in only two narrow contexts: where the professional's medical care was either (1) 'so grossly incompetent' that it 'shock[s] the conscience' or (2) 'so cursory as to amount to no medical treatment at all'"). "Outside these two categories, an inmate's remedy lies in malpractice law, not the federal Constitution." *Id.*

A plaintiff must also establish a subjective element showing the prison official acted with a sufficiently culpable state of mind. *Id.* "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. This standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Flanory v. Bonn*, 604 F.3d 249, 253-55 (6th Cir.

2010) (citing *Farmer*, 511 U.S. at 837). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Farmer*, 511 U.S. at 838. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer*, 511 U.S. at 834.

The Court holds that Plaintiff has failed to meet the high standard for proving deliberate indifference as to both Dr. Guerrant and NP Hendrix Labonte. *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022) (holding that a court must consider each provider's liability separately). It is undisputed that Plaintiff suffered from a spinal epidural abscess that caused irreversible damage to the thoracic area of Plaintiff's spinal column, not to mention several weeks of significant pain before the condition was diagnosed. No one, including Dr. Guerrant or NP Hendrix-Labonte, ever correctly diagnosed Plaintiff's condition. As the record shows, however, prison medical staff provided treatment at all times during Plaintiff's confinement at the Northwest Correctional Complex.

"[A]s a general matter, courts are reluctant to second guess the medical judgment of prison medical officials." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 313 (6th Cir. 2023) (citing *Jones v. Muskegon Cnty.*, 625 F.3d 935, 944 (6th Cir. 2010)). That principle is true even in cases like Plaintiff's where prison medical staff fail to make a correct diagnosis. The Sixth Circuit has repeatedly held that "the simple fact that a medical professional misdiagnosed a patient does not rise to the level of deliberate indifference." *Id.* (citing *Griffith v. Franklin Cnty.*, 975 F.3d 554, 573 (6th Cir. 2020)). When an inmate received treatment and claims that his medical care was inadequate, "the objective component of an Eighth Amendment claim requires a showing of care so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737 (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803,

819 (6th Cir. 2005)).  This means the plaintiff must present enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the severity of the harm caused by the allegedly inadequate treatment.  *Rhinehart*, 894 F.3d at 737.  There must be "medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013).

Based on the undisputed evidence at summary judgment and viewing the facts in a light most favorable to Plaintiff, Plaintiff has failed to show that the care he received was grossly incompetent or inadequate or that Dr. Guerrant or NP Hendrix-Labonte knew of and deliberately disregarded a serious risk to Plaintiff's health.

**A. Deliberate Indifference - Dr. Guerrant**

Start with Dr. Guerrant.  Dr. Guerrant saw Plaintiff in clinic October 2022, three months after Plaintiff was in the motor vehicle accident and a short time after the onset of Plaintiff's back pain.  Plaintiff was treated by P.A. Collins, who is not a party to the case, for his complaints during July and August 2022 and at other times later in 2022.  According to Plaintiff's SCR dated October 3, 2022, Plaintiff was experiencing pain in the thoracic area of his back, or the "mid-back," and spasms.  Over-the-counter strength pain medicine like Tylenol, naproxen, and icy hot did not help.  When nursing staff decided to refer Plaintiff to Dr. Guerrant for evaluation, Plaintiff saw Dr. Guerrant on October 10, 2022.  Based on Plaintiff's "history of degenerative disease of the cervical spine" and new complaints about pain in a different part of his back, Dr. Guerrant requested an MRI of the thoracic region of Plaintiff's spine.  The parties agree that Dr. Guerrant's request for the MRI in October 2022 was medically sound.

Unfortunately, Dr. Guerrant's request was denied.  According to Defendants, utilization

management denied the request about a week later.[8]  The parties dispute the reasons for the denial.

Plaintiff contends that Dr. Guerrant was asked to provide more detail and failed to do so.  Dr.

Guerrant testified that he interpreted the written denial as a proposal of an alternative treatment plan

and considered it reasonable under the circumstances.   While the written denial did state "please

clarify rationale for thoracic spine MRI in patient with known cervical disc disease without new

deficits (pain and numbness noted in consult but not demonstrated in progress note)," the reviewing

official also asked for "documentation of contraindication to or failure of a trial of NSAIDS or

acetaminophen for at least 5 weeks, failure of home exercises for at least 6 weeks, and failure of

activity modification for at least 6 weeks."  Dr. Guerrant took the request for documentation as a

recommendation for an alternative course of treatment and decided to implement the approach

suggested in the written denial.

Regardless of the correct interpretation of the written denial, Plaintiff's complaint about Dr.

Guerrant's response to the denial amounts to a disagreement over the course of treatment Dr.

Guerrant chose to employ.  Disagreement about the plaintiff's medical treatment or a plaintiff's

"desire for additional or different treatment," does not amount to an Eighth Amendment violation.

*Woodcock v. Correct Care Sols.*, 861 F. App'x 654, 660 (6th Cir. 2021).  Plaintiff has not shown

how Dr. Guerrant's decision to treat him somewhat conservatively rose to the level of grossly

inadequate treatment.  When a deliberate indifference claim is based on a delay in treatment (and

---

[8] The parties have cited no evidence to establish how utilization management worked in this case, despite the significant role it played in Plaintiff's care.  As other deliberate indifference cases illustrate, "utilization management" typically means "an administrative, non-treating doctor who approved or denied specialist medical referrals that treating doctors sought for their patients." *Rhinehart*, 894 F.3d at 745.  Utilization management played a significant role in assessing Plaintiff's need for an MRI and, when the MRI was actually approved, the actual timing of the procedure.  And yet as the party with the burden of proof, Plaintiff has not adduced any evidence to spell out how the utilization management process worked or who the relevant decisionmakers were.

not a failure to treat at all), a plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Est. of Majors v. Gerlach*, 821 F. App'x 533, 539 (6th Cir. 2020). Plaintiff has not pointed to any opinion evidence from a qualified opinion witness describing Dr. Guerrant's treatment as grossly incompetent or inadequate in October 2022. While the parties have attached excerpts of each opinion witness's deposition testimony to their briefs, Plaintiffs have not cited any specific testimony or opinion evidence to show that Dr. Guerrant's plan for treating Plaintiff in October 2022 was grossly inadequate.

Furthermore, Dr. Guerrant's treatment of Plaintiff's new back complaint was consistent with Plaintiff's history of degenerative disc disease. The Sixth Circuit has held that a misdiagnosis is not deliberate indifference when "the majority of [an inmate's] symptoms were entirely consistent" with another ailment. *Howell*, 67 F.4th at 314 (collecting cases). The evidence shows that Plaintiff had an existing diagnosis of degenerative disc disease in the cervical section of his spine. Dr. Guerrant was aware of this condition because prison medical staff had referred Plaintiff to a neurosurgeon (he was not a candidate for surgery) and tried other forms of treatment like physical therapy and spinal injections to manage the pain the condition caused Plaintiff to suffer. Plaintiff counters that the Court should only consider his health and symptoms from October 2022 to December 2022. While it is true that Plaintiff's complaints concerned a different part of his back and originated after Plaintiff was in a vehicle crash, the fact is Dr. Guerrant decided to treat Plaintiff's pain in a manner consistent with the treatment for Plaintiff's ongoing degenerative disc disease.

Perhaps more important, nothing in the record evidence shows that Dr. Guerrant's subsequent treatment amounted to no treatment at all because it was so grossly inadequate under

the circumstances. Plaintiff continued to submit SCRs in October and November 2022 with complaints about back pain and pain when breathing. When Plaintiff was seen about the SCRs, Plaintiff received treatment from unnamed sick call nursing staff, P.A. Collins, or NP Hendrix-Labonte. Plaintiff continued to receive standard pain relief, then a steroid taper, and finally other NSAID pain medication and muscle relaxers to control the back pain he was experiencing. The next evidence of Dr. Guerrant's involvement in Plaintiff's care came on November 30, 2022. Dr. Guerrant did not actually treat Plaintiff on that date. Instead NP Hendrix-Labonte conferred with Dr. Guerrant after she had treated Plaintiff, and both agreed it was time to submit a second request for a thoracic MRI. Dr. Guerrant also ordered more x-rays of the thoracic region of Plaintiff's spine.

There is a factual dispute about whether Plaintiff was experiencing symptoms of a spinal infection on November 30, 2022. Defendants assert there were none. Plaintiff counters that worsening "severe midback pain," "unstable gait," and "muscle weakness in upper and lower extremities" are all "hallmarks of spinal epidural abscess/osteomyelitis." Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 62. Even accepting as true Plaintiff's contention that these symptoms should have alerted Dr. Guerrant to the possibility of spinal infection, his misdiagnosis and "failure to alleviate a significant risk that he should have perceived but did not" is not tantamount to deliberate indifference. *Farmer*, 511 U.S. at 838.

Plaintiff's x-rays from November 30, 2022, which were read and interpreted in a radiologist's report on December 2, 2022, clearly raised concerns about a number of more serious conditions at work in Plaintiff's case. There is no evidence of Dr. Guerrant learning about the radiologist's report until December 8, 2022. Dr. Guerrant testified that he reviewed the x-rays and discussed them with Plaintiff at an office visit on December 9, 2022. Although the MRI had been approved at that point, it was not scheduled to happen until December 21, 2022. A dispute also

exists over the extent of Plaintiff's immobility at that time or how much Dr. Guerrant perceived or should have perceived about Plaintiff's condition from that examination.  Dr. Guerrant testified that even though the x-ray was "abnormal," the MRI was scheduled, and he saw no reason to try to move it up because he did not believe Plaintiff's condition had changed.  Guerrant Dep. 56:7-57:4, Aug. 28, 2024 (ECF No. 90-5).  Even assuming Plaintiff could prove that Dr. Guerrant's opinion breached the professional standard, negligence or medical malpractice do not amount to constitutional violations. *See Farmer*, 511 U.S. at 835–36; *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Viewing this proof in a light most favorable to Plaintiff, the record simply does not show that Dr. Guerrant's course of treatment was grossly inadequate.  Dr. Guerrant is entitled to judgment as a matter of law on Plaintiff's deliberate indifference claim against him for this reason alone.

Not only has Plaintiff failed to satisfy the objective element of his deliberate indifference claim, Plaintiff has also failed to meet the subjective test for his Eighth Amendment claim against Dr. Guerrant.  At this stage of the case, Plaintiff must marshal the evidence to show Dr. Guerrant "subjectively perceived facts from which to infer substantial risk [to Horton], that he did in fact draw the inference, and that he then disregarded that risk." *Rhinehart*, 894 F.3d at 738.  As Plaintiff argues in his Motion for Summary Judgment, Dr. Guerrant was "deliberately indifferent to Plaintiff's clearly deteriorating and painful condition, as evidenced by their repeated failure to appropriately diagnose, treat or, direct his treatment–especially during the critical period from December 5, 2022 through December 8, 2022 and despite knowledge of his condition–which subjected him to excruciating pain and ultimately left him permanently paralyzed."  Pl.'s Mot. for Summ. J. 2 (ECF No. 94).  According to one of Plaintiff's opinion witnesses, Plaintiff entered "the most critical phase" around December 5, 2022, when Plaintiff testified that he fell due to a lack of

mobility in his legs. Mattei Dep. 75:3-8, Oct. 25, 2024. Dr. Mattei went on to opine that Plaintiff remained in "the most critical phase" between December 5 and December 9, 2022. *Id.* at 80:8-18; *see also* Kern Dep. 96:8-21, Nov. 5, 2024 (opining that "the last time" Plaintiff could have more likely than not avoided permanent injury was December 9, 2022).

But the record of Plaintiff's treatment during those critical days only shows Dr. Guerrant involved in Plaintiff's care at two points in time. When Plaintiff had a sick call on December 8, 2022, nursing staff called Dr. Guerrant and read him the results of the x-rays taken on December 2, 2022. The implication from the proof is that this was the first time Dr. Guerrant was made aware of the x-ray results and the possibility of osteomyelitis in Plaintiff's case. Dr. Guerrant testified that the x-ray results were "abnormal" in his opinion. Even so, Dr. Guerrant had already requested an MRI, which was approved the same day Dr. Guerrant learned about the "abnormal" x-ray. So Dr. Guerrant ordered more pain medication. When Dr. Guerrant saw Plaintiff in clinic the following day, December 9, 2022, Plaintiff's MRI had been scheduled for December 21, 2022. Dr. Guerrant prescribed Plaintiff Flexeril, a muscle relaxer, and Ultram, a pain killer. Although Dr. Guerrant did not recall many of the circumstances of his December 9 examination of Plaintiff (like the fact Plaintiff came to the clinic in a wheelchair), Dr. Guerrant testified that in his opinion the "abnormal" x-ray and Plaintiff's symptoms did not warrant more urgent care. As a result, Dr. Guerrant saw no reason to try to move up Plaintiff's MRI.

Even if Dr. Guerrant should have perceived the seriousness of the x-ray results or the acute nature of Plaintiff's condition, "an official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Farmer*, 511 U.S. at 838. Plaintiff has not shown that Dr. Guerrant was aware of the specific risks of a spinal epidural abscess and then consciously disregarded the risk. Without more, Plaintiff cannot prove the

subjective element of his deliberate indifference claim against Dr. Guerrant.

The Court notes a particular aspect of the evidence and what the Court can only describe as a gap or omission in the proof. At summary judgment, Plaintiff has shown that he made a number of SCRs after Dr. Guerrant saw him in October 2022. Plaintiff's SCRs over the next several weeks painted a picture of his worsening acute pain and the alarming deterioration in his overall health. In several instances, though, Plaintiff only received a response to his SCR from prison nursing staff or from P.A. Collins or N.P. Hendrix-Labonte, not Dr. Guerrant. The most critical gap between Plaintiff's SCRs and a response from medical staff seems to be Plaintiff's SCR on December 11, 2022, in which Plaintiff states he had lost the use of his legs. Dr. Guerrant and NP Hendrix-Labonte deny that they were alerted to this SCR at the time. Plaintiff offers no evidence to explain how the prison's SCR system worked or how a medical provider, including the only physician working at the facility, received information about the health condition of an inmate experiencing an acute health need or why Plaintiff's December 11, 2022 SCR was never brought to Dr. Guerrant's attention. Without some proof to show that Dr. Guerrant was actually aware of this change in Plaintiff's condition, Plaintiff cannot prove the subjective element of his deliberate indifference claim against Dr. Guerrant. For all of these reasons, Dr. Guerrant's Motion for Summary Judgment is **GRANTED** as to the § 1983 claim against him.

## B. NP Henxdrix-Labonte – Deliberate Indifference

Plaintiff's deliberate indifference claim against NP Hendrix-Labonte fares no better. As the Court has already noted, Plaintiff's burden of proof on the objective element of his Eighth Amendment claim "requires a showing of care so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737. The Court holds that Plaintiff has not adduced proof to show that NP Hendrix-Labonte

provided grossly incompetent or inadequate treatment. The undisputed evidence shows that NP Hendrix-Labonte only treated Plaintiff on three occasions after the onset of his mid-back pain, all in November 2022. On November 8, 2022, Plaintiff stated in an SCR: "Back pain is escalating badly. Can barely move now. This has been going on for over a month. I need to see a provider today please." NP Hendrix-Labonte saw Plaintiff the following day on November 9, 2022. Following her examination NP Hendrix-Labonte ordered a steroid taper for 12 days and set a follow-up appointment for two weeks out to evaluate the effectiveness of the treatment. *Id.* ¶ 48.

But Plaintiff made another SCR just two days later, once more complaining of sharp and constant pain and increased challenges in routine activities. Plaintiff saw NP Hendrix-Labonte on November 15, 2022, and then again on November 30, 2022. During the November 30, 2022 appointment, NP Hendrix-Labonte noted Plaintiff's complaints about muscle weakness in his arms and legs and his "severe mid-back pain" with a pain level of 10 out of 10. NP Hendrix-Labonte consulted with Dr. Guerrant at that point and the two decided that Plaintiff should undergo an MRI of his thoracic spine. Whatever criticisms Plaintiff might have about a failure to correctly diagnose him, that claim sounds in negligence, not reckless disregard. Medical malpractice does not rise to the level of a constitutional violation. *See Farmer*, 511 U.S. at 835–36. Plaintiff has not shown how the treatment Plaintiff received from NP Hendrix-Labonte in November 2022 was grossly inadequate.

The only proof of NP Hendrix-Labonte being involved in Plaintiff's treatment after November 2022 was by telephone. Although NP Hendrix-Labonte did not see Plaintiff again in clinic after November 30, 2022, there is evidence that nursing staff called her about Plaintiff's sick call visit on December 6, 2022. Plaintiff asked to be taken to an ER because he could not sit up or stand up and needed a wheelchair for transportation. There is no evidence that NP Hendrix-Labonte

spoke directly with Plaintiff or that nursing staff read NP Hendrix-Labonte Plaintiff's SCR or relayed to her his request to be taken to the ER. The proof just shows that NP Hendrix-Labonte wrote an order for an appointment to be scheduled so that she could discuss Horton's x-ray results with him. The record does not indicate whether NP Hendrix-Labonte actually reviewed the x-rays, when the appointment was set, or that it ever happened. In the final analysis, Plaintiff has not carried his burden to prove the objective element of his deliberate indifference claim against NP Hendrix-Labonte by showing that her treatment was wholly inadequate.

Even if he could prove the objective element, Plaintiff's Eight Amendment claim against NP Hendrix-Labonte fails under the subjective prong. Plaintiff has not proven that NP Hendrix-Labonte "subjectively perceived facts from which to infer substantial risk [to Horton], that [she] did in fact draw the inference, and that [she] then disregarded that risk." *Rhinehart*, 894 F.3d at 738. Plaintiff again focuses on "the most critical phase" of his case during a period between December 5 and December 9, 2022. But Plaintiff cites no evidence that NP Hendrix-Labonte "subjectively perceived" the precipitous decline in Plaintiff's condition during those specific days. It is undisputed that NP Hendrix-Labonte never treated Plaintiff at that time; nursing staff only consulted her by phone on December 6, 2025. Plaintiff has not shown that NP Hendrix-Labonte had subjective perception of his full condition.

Moreover, Plaintiff has not shown that any subsequent SCRs were ever brought to NP Hendrix-Labonte's attention. For example, Plaintiff submitted an SCR on December 11, 2022, asking to see Dr. Guerrant or be taken to an ER. Plaintiff reported that he had lost the use of his right leg over the weekend and that his left leg seemed to be following the same pattern. NP Hendrix-Labonte testified that she did not see and was not made aware of the December 11, 2022 SCR. Even though this fell outside of the critical window of time described by Plaintiff's opinion

witness, the December 11, 2022 SCR underscores a fact the Court has already drawn attention to in this case concerning the SCRs and the facility's system for bringing medical needs to the attention of providers. Once more, Plaintiff has offered no proof to show that NP Hendrix-Labonte saw the December 11, 2022 SCR or that nursing staff brought it to her attention to alert her about the urgency of Plaintiff's condition. The Court concludes that Plaintiff has not proven the subjective element of his deliberate indifference claim against NP Hendrix-Labonte. Therefore, NP Hendrix-Labonte's Motion for Summary Judgment is **GRANTED** on the § 1983 claim against her.

   C.   **Centurion –** *Monell* **Liability Under § 1983**

   Plaintiff would hold Centurion itself liable for the violation of his constitutional rights. In order to prove a § 1983 claim against a municipality, a plaintiff must prove a direct causal link between the deprivation of his rights and some county policy or custom. *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that local government "cannot be held liable solely because it employs a tortfeasor . . . on a *respondeat superior* theory"). This means the plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The Sixth Circuit has commented that "plaintiffs who bring *Monell* claims face a high bar[,] and a *Monell* claim that survives summary judgment is exceedingly rare." *Simpkins v. Boyd Cnty. Fiscal Court*, 2022 WL 17748619, at *15 (6th Cir. Sept. 2, 2022) (citing *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 541–42 (6th Cir. 2018)).

   Private companies like Centurion can be held liable under *Monell*. *Harris v. Aramark Corr. Servs., LLC*, No. 20-3343, 2021 WL 7543808, at *3 (6th Cir. Dec. 27, 2021) (citing *West v. Atkins*, 487 U.S. 42, 54 (1988)). Like a municipal government, Centurion can only be liable under § 1983

"when execution of the private contractor's policy or custom inflicts the alleged injury," not on the basis of *respondeat superior* or vicarious liability. *Perry v. Corizon Health, Inc.*, No. 17-2489, 2018 WL 3006334, at *1 (6th Cir. June 8, 2018) (collecting cases). To satisfy the *Monell* requirement, Plaintiff "must establish that his constitutional rights were violated and that a policy or custom of [Centurion] was the 'moving force' behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010).

The Court holds that Centurion is entitled to judgment as a matter of law. First and foremost, Plaintiff has failed to prove a violation of his constitutional rights. The Court has granted summary judgment to Dr. Guerrant and NP Hendrix-Labonte, the only medical professionals alleged to have violated Plaintiff's Eighth Amendment rights. In the absence of a proven constitutional deprivation, Plaintiff's *Monell* claim against Centurion must fail. Second, Plaintiff has not identified a Centurion policy or custom which was the moving force behind the alleged deliberate indifference of Dr. Guerrant or NP Hendrix-Labonte. Under general *Monell* principles, a plaintiff can prove the existence of a policy or custom in several ways: (1) the company's official policies; (2) actions taken by company officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations. *Winkler v. Madison Cnty.*, 893 F.3d 877, 901 (6th Cir. 2018) (citing *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015)).

Plaintiff makes none of these showings here. Plaintiff makes a passing comment in his brief that the Centurion policies or customs at issue in his case were "the failure to timely authorize off-site specialty medical care, reliance on conservative treatment methodologies [], and inadequate supervision of medical staff . . ." Pl.'s Resp. in Opp'n 3 (ECF No. 98). However, other than argument, Plaintiff has cited no evidence to establish that these were actual company policies

or that he can meet any of the other tests for proving a policy or custom. Even viewing the proof in a light most favorable to him, Plaintiff has merely shown a single episode, his own, and alleged that Centurion personnel did not act quickly enough to approve an MRI or persisted in an overly conservative course of treatment for too long. "[A] a one-time refusal and not a pattern or practice of denials" does not suffice to show a policy or custom. *Perry*, 2018 WL 3006334, at *2. The Court concludes that Plaintiff cannot prove this element of his *Monell* claim against Centurion. Therefore, Centurion's Motion for Summary Judgment on Plaintiff's § 1983 claim against it is **GRANTED**.

## II.  Tennessee Health Care Liability Act

This just leaves Plaintiff's claims for medical negligence in violation of the Tennessee Health Care Liability Act. Plaintiff's claims for the violation of his constitutional rights arise under 42 U.S.C. § 1983, meaning the Court has subject-matter jurisdiction over the claims pursuant to 28 U.S.C. § 1331. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Plaintiff's claims for medical negligence under the Tennessee Health Care Liability Act present a question of Tennessee law. The Court exercises its jurisdiction over that set of claims pursuant to 28 U.S.C. § 1367. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

District courts may to decline to exercise supplemental jurisdiction over a related claim like Plaintiff's medical negligence claims if

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district

court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Generally, "when a federal court dismisses all pending federal claims before trial, . . . it is usually best to allow the state courts to decide state issues" by declining to exercise supplemental jurisdiction. *Kowall v. Benson*, 18 F.4th 542, 549 (6th Cir. 2021) (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996)). Such a dismissal is without prejudice to a party's right to bring the claim in a new proceeding in state court. *Sampson v. Garrett*, 917 F.3d 880, 883 (6th Cir. 2019).

The Court hereby declines to exercise supplemental jurisdiction over Plaintiff's state law claims for medical negligence and therefore need not decide each of the issues presented in Defendants' Motions in Limine or their Motion to Strike. Plaintiff's state law claims are dismissed without prejudice.

## <u>CONCLUSION</u>

The Court holds that Plaintiff has not proven his § 1983 claims of deliberate indifference against Dr. Guerrant and NP Hendrix-Labonte. Therefore, the Individual Defendants's Motion for Summary Judgment is **GRANTED** on Plaintiff's § 1983 claims against them. Centurion's Motion for Summary Judgment is likewise **GRANTED**. Plaintiff's Motion for Summary Judgment on his § 1983 claims is **DENIED**. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims and therefore **DISMISSES** them without prejudice.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 3, 2025.